# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WHITE WINSTON SELECT ASSET FUNDS, LLC, and GT ACQUISITION GROUP, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-2092-RGA-SRF |
| GOOD TIMES RESTAURANTS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this breach of contract case is defendant Good Times Restaurants Inc.'s ("Good Times") motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (D.I. 6) For the following reasons, the court recommends DENYING Good Times' motion.

### II. BACKGROUND

#### a. The Parties

Plaintiff White Winston Select Asset Funds, LLC ("White Winston") is a Delaware limited liability company that invests in private and public companies. (D.I. 1, Ex.1 at ¶ 4)

---

[1] The briefing for the pending motion is as follows: defendant's opening brief (D.I. 7), plaintiffs' answering brief (D.I. 11), and defendant's reply brief (D.I. 12). Plaintiffs also filed a motion for leave to file a sur reply. (D.I. 13) Plaintiffs' motion has been fully briefed as follows: plaintiffs' opening brief (D.I. 14), defendant's answering brief (D.I. 15), and plaintiffs' reply brief (D.I. 16). The court grants plaintiffs' motion and considers plaintiffs' sur reply (D.I. 14, Ex. A) in reaching a decision on defendant's motion to dismiss because the sur-reply addresses arguments made for the first time in a reply brief. *See St. Clair Intellectual Proper. Consultants, Inc. v. Samsung Elecs. Co. Ltd.*, C.A. No. 12-69-LPS, 291 F.R.D. 75, 80 (D. Del. 2013); D. Del. LR 7.1.2(b), 7.1.3(c)(2).

Plaintiff GT Acquisition Group, Inc. ("GTAG") is a Delaware corporation and White Winston affiliate, established specifically for the purpose of acquiring Good Times Drive Thru ("Drive Thru"). (*Id.* at ¶¶ 5, 16)  Good Times is a Nevada corporation with a principal place of business in Lakewood, Colorado. (D.I. 1 at ¶ 10; D.I. 1, Ex. 1 at ¶ 6)  Good Times' subsidiary, Drive Thru, is a restaurant chain with locations in Wyoming and Colorado. (D.I. 1, Ex. 1 at ¶ 1)

   b. **Facts**[2]

This action stems from the alleged termination of negotiations for the purchase and sale of Drive Thru. (D.I. 1, Ex. 1)  From December 2018 through August 2019, Good Times negotiated to sell Drive Thru to White Winston and GTAG (collectively, "plaintiffs") via a Stock Purchase Agreement ("the SPA"). (*Id.* at ¶¶ 1–3)  Plaintiffs seek specific performance of Good Times' obligations under the SPA and money damages for Good Times' present breach of those obligations or, in the alternative, reliance damages based on promissory estoppel. (*Id.* at ¶¶ 85, 97, 115)

      i. **The letters of intent**

Beginning in December 2018, White Winston and Good Times engaged in negotiations for the purchase and sale of Drive Thru. (*Id.* at ¶ 9)  In February 2019, the parties signed a letter of intent ("the Initial LOI") and agreed to price terms for the deal: $8 million in cash and a $2 million loan. (*Id.* at ¶¶ 11–16)

In April 2019, the parties signed a second letter of intent ("the Amended LOI"). (*Id.* at ¶ 32).  The Amended LOI voids the Initial LOI,[3] lists the collateral agreements required for

---

[2] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion to dismiss. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).
[3] The Amended LOI "completely supersedes and replaces the [Initial LOI], the result being that the [Initial LOI] is void." (D.I. 1, Ex. 1, at Ex. D at 1)

closing, and states new price terms: $8 million in cash, a $600,000 full recourse loan, and a $1.15 million limited recourse loan. (*Id.* at ¶¶ 32–42)  The Amended LOI also contains the following binding language:

> 8. <u>Legal Effect.</u>  This letter is not binding upon any person and has no legal effect whatsoever; provided, however, that paragraphs 7, 8, 9, 10 and 11 hereof shall constitute a binding agreement of the parties hereto.  Neither this letter nor any party's execution thereof shall constitute an obligation or commitment of any party to enter into the Definitive Agreement or give any party any rights or claims against another in the event any party for any reason terminates negotiations to effect the Acquisition, other than in respect of claimed breaches of paragraphs 7, 8, 9, 10 and 11 hereof.  All obligations or commitments to proceed with the Acquisition shall be contained only in the Definitive Agreement.

(D.I. 1, Ex. 1 at Ex. D, ¶ 8).  The "Definitive Agreement" to which the Amended LOI refers is the SPA.  (D.I. 1, Ex. 1 at ¶ 41).

### ii. The SPA

From May 2019 through July 2019, the parties continued to work toward finalizing a deal.  (*Id.* at ¶¶ 41–52)  As of July 25, 2019, one unresolved issue remained: Good Times had guaranteed some of Drive Thru's leases, which would limit Good Times' future ability to borrow money without a release from Drive Thru's landlords—something Good Times did not expect to occur.  (*Id.* at ¶¶ 43–51)  By the end of July 2019, after several emails back and forth, the parties resolved the issue.  (*Id.* at ¶¶ 51–52)  At that time, the parties had agreed on all substantial terms of the SPA; the sole remaining open item related to a detail in a collateral agreement,[4] which the parties resolved by August 12, 2019.  (*Id.* at ¶¶ 52–68)

The next day, August 13, 2019, Good Times' CEO backed out of the deal to sell Drive Thru in a voicemail to White Winston's representative.  (*Id.* at ¶¶ 76–78)  Good Times' CEO

---

[4] On August 8, 2019, the parties ran into another potential problem: a "drive time" provision in a collateral agreement to the SPA, a services agreement relating to Drive Thru's ability to charge for its employees' travel time.  (D.I. 1, Ex. 1 at ¶¶ 61–68)

3

told White Winston that Good Times' "board has decided to back away from the transaction." (*Id.* at ¶ 76)  He cited "the value of the deal" as the main reason for Good Times' change of heart.  (*Id.*)  He invited further negotiations but conveyed Good Times' expectation of receiving "$11 million net cash" for Drive Thru.  (*Id.*)  The parties never signed the SPA.  (*Id.* at ¶ 81)

> The SPA contains the following relevant language:
>
> Section 2.3.  <u>Closing</u>.  The purchase and sale (the "Closing") provided for in this Agreement will take place at the offices of Buyer's counsel . . . on September 25, 2019 . . . or at such other time and place as the parties may agree.  Subject to the provisions of Section 9, failure to consummate the purchase and sale provided for in this Agreement on the date and time and at the place determined pursuant to this Section 2.3 will not result in the termination of this Agreement and will not relieve any party of any obligation under this agreement.
> . . .
>
> Section 5.8.  <u>Best Efforts</u>.  Between the date of this Agreement and the Closing Date,[5] Seller will use its Best Efforts to cause the conditions in Sections 7 and 8 to be satisfied.[6]
> . . .
>
> Section 9.1.  <u>Termination Events</u>.  This Agreement may, by notice given prior to or at the Closing, be terminated:
> . . .
> (d)     by either Buyer or Seller if the Closing has not occurred, other than through the failure of any party seeking to terminate this Agreement to comply fully with its obligations under this Agreement, on or before September 15, 2019, or such later date as the parties may agree upon.
> …

(D.I. 1, Ex. 1 at Ex. A, §§ 2.3, 5.8, 9.1).

## III.   LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule

---

[5] The parties anticipated a September 25, 2019 closing date.  (D.I. 1, Ex. 1 at ¶ 73)
[6] Sections 7 and 8 list conditions precedent to the parties' respective obligations to close the deal.  (D.I. 1, Ex. A at Ex. A, §§ 7–8)

4

12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.    DISCUSSION[7]

In its opening brief, Good Times argued that the only signed and enforceable agreement between the parties was the Amended LOI.  (D.I. 7 at 7–8)  Good Times alleged that because paragraph 8 of the Amended LOI did not obligate Good Times to enter into the SPA and limited the claims plaintiffs could assert against Good Times, plaintiffs have no causes of action against Good Times.  (*Id.* at 8–9)  Moreover, Good Times focused its argument for dismissal of plaintiffs' claims under the SPA on the fact that it had never been signed, therefore, it should be found invalid and unenforceable.  (*Id.* at 9–12)  Good Times also made a brief argument that the statute of frauds also rendered the SPA unenforceable.  (*Id.* at 13)

However, in its reply brief, Good Times argues, for the first time, that the parties never reached an agreement on all substantial terms of the SPA, therefore, plaintiffs' claims under the SPA should be dismissed.  (D.I. 12 at 5–6)  The court will not entertain arguments that were not asserted in the movant's opening brief but reserved for the reply.  Consequently, Good Times has withdrawn this argument.  (D.I. 19 at 16)

Presently, Good Times argues, first, that the court should dismiss plaintiffs' specific performance and breach of contract claims because the Delaware statute of frauds applies to the SPA and renders the SPA unenforceable.  (D.I. 7 at 13; D.I. 12 at 1–3)  Second, Good Times

---

[7] On November 5, 2019, Good Times properly removed this case from the Court of Chancery of the State of Delaware to this court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (D.I. 1)  Federal courts apply state substantive law and federal procedural rules in cases removed to federal court based on diversity jurisdiction.  *New Castle County, DE v. Natl. Union Fire Ins. Co. of Pittsburgh, PA*, 243 F.3d 744, 749 (3d Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938))  In addition, the Amended LOI and the SPA each contain a State of Delaware choice of law provision.  (D.I. 1, Ex 1. at Ex. A, § 11.14; D.I. 1, Ex. 1. at Ex. D at 1)

argues that the court should dismiss plaintiffs' promissory estoppel claim because the Amended LOI bars the claim. (D.I. 7 at 7–9) The court addresses each argument in turn below.

### a. The statute of frauds does not apply to the SPA

In general, the Delaware statute of frauds[8] requires that contracts be in writing. *See Moisman v. Madison Cos., LLC*, C. A. No. 17-1517-CFC, 2019 WL 203126, at *2 (D. Del. 2019) (citing *Olson v. Halvorsen*, 982 A.2d 286, 291 (Del. Ch. 2008)). However, the Delaware "Statute of Frauds does not apply to a contract which may, by any possibility, be performed within a year." *Haveg Corp. v. Guyer*, 211 A.2d 910, 912 (Del. 1965).

Although the parties agree that no one signed the SPA, the statute of frauds does not apply because, accepting the truth of the facts pleaded in the complaint, Good Times could have performed its obligation under the SPA to use its best efforts to close the transaction within one year. *See id.* Plaintiffs seek to compel Good Times to "undertake [its] best efforts to close the acquisition" of Drive Thru, as required by the SPA. (D.I. 1, Ex. 1 at ¶¶ 80, 87) Plaintiffs allege that the parties had agreed to the SPA's substantial terms by July 26, 2019, and anticipated the transaction would close on September 25, 2019. (*Id.* at ¶¶ 72–73) Accepting these allegations as true, the parties could have used their best efforts to close the deal within a year. Because the statute of frauds does not require dismissal based on the allegations in the complaint, the court recommends denying Good Times' motion to dismiss plaintiffs' specific performance and breach of contract claims.[9] *See Haveg*, 211 A.2d at 912.

---

[8] "No action shall be brought to charge any person . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof, . . . unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith. . . ." 6 Del. C. § 2714(a) (2017).

[9] Plaintiffs alternatively argue, without citing any paragraphs of their complaint, that the SPA satisfies the statute of frauds because, under Article 9 of the SPA, the parties could fail to close within a year without breaching the SPA, which would terminate the best efforts obligation.

7

Good Times argues that the SPA requires Good Times to enter into a collateral noncompete agreement, which obligates Good Times to refrain from competing with Drive Thru for three years.  (D.I. 12 at 2)  Good Times argues that the noncompete agreement's three-year obligation brings the SPA squarely within the statue of frauds.  (*Id.*)  Good Times' argument fails because, according to the allegations of the complaint, the noncompete agreement is a condition precedent to closing, not entering into the SPA.  (D.I. 1, Ex. 1 at ¶ 92)  Accepting the allegations as true, the noncompete agreement would take effect only if the deal to sell Drive Thru closes.  (*Id.* at ¶¶ 42, 70, 92)

Good Times also argues the SPA could not be performed within one year because the Article 10 of SPA requires Good Times to indemnify plaintiffs for five years.  (D.I. 7 at 13; D.I. 12 at 2)  Plaintiffs counter Good Times' argument with the statement that Good Times' indemnification obligation would arise only if the Drive Thru deal closes.  (D.I. 14, Ex. 1 at 6–7)  Neither party cited a specific SPA provision, substantive allegation in the complaint, or outside legal authority to support their respective argument on this point.  At the motion to dismiss stage, the court will not consider factual disputes over interpretation of the contract's indemnity language.  *See Molina Info. Sys., LLC v. Unisys Corp.*, C.A. No. 12–1022–RGA, 2014 WL 4365278, at *7 (D. Del. Sept. 2, 2014); *Universal American Corp. v. Partners Healthcare Sols. Holdings, L.P.*, C.A. No. 13-1741-RGA, 61 F.Supp.3d 391, 400 (D. Del. 2014) ("[Q]uestions involv[ing] disputed issues of fact and contract interpretation [are] not suitable to resolution on a motion to dismiss.").

---

(D.I. 11 at 17)  Therefore, plaintiffs argue, the statute of frauds does not apply because the termination or failure to close "is [a condition] that may happen in one year."  *Haveg*, 211 A.2d at 912.  This alternative factual argument, outside of the pleadings, is not proper at this stage of the proceedings.

Good Times' arguments assert factual challenges to plaintiffs' claims, the relief plaintiffs seek, and the scope of the SPA.  Plaintiffs do not seek an order requiring the closing of the SPA, nor do plaintiffs seek expectation damages that would have resulted from a completed sale.  (D.I. 14, Ex. 1 at 5)  Plaintiffs seek specific performance and monetary damages based on Good Times' present failure to exercise its best efforts to close the transaction.  (D.I. 1, Ex. 1 at ¶¶ 72, 78, 80, 87, 92, 96)  Because the facially plausible complaint alleges the parties could have exercised their best efforts to close the transaction "within the space of 1 year," the court recommends denying the motion to dismiss.[10]  *See* 6 Del. C. § 2714(a) (2017).  Plaintiffs have alleged plausible facts, accepted as true, to establish a claim for relief against Good Times in the form of an order granting specific performance of Good Times' best efforts obligation under the SPA or money damages for breach of that obligation.  *See, e.g.*, *WaveDivision Holdings LLC v. Millennium Dig. Media Sys., LLC*, 2010 WL 3706624, at *18–19, 22 (Del. Ch. Sept. 17, 2010) (awarding money damages after concluding that the defendant "did not use its reasonable best efforts to secure" financing); *Hexion Specialty Chems., Inc. v. Huntsman Corp.*, 965 A.2d 715, 721, 762 (Del. Ch. 2008) (awarding specific performance of all contractual obligations, including "reasonable best efforts" to obtain financing, except for closing the deal).  Therefore, the court recommends denying Good Times' motion to dismiss plaintiffs' breach of contract and specific performance claims.

### b.  The Amended LOI does not bar plaintiffs' promissory estoppel claim

Good Times argues that the Amended LOI's language in paragraph 8 bars plaintiffs' alternative promissory estoppel claim as a matter of law.  (D.I. 7 at 8–9)  Good Times argues the

---

[10] Without citing to any allegations in the complaint, plaintiffs argue the multiple writings exception to the statute of frauds applies to the SPA.  (D.I. 11 at 17-18)  The court will not address factual arguments at this stage of the proceeding.

Amended LOI (1) does not obligate either party to enter into the SPA and (2) limits plaintiffs to claims arising from breaches of the terms of the Amended LOI. (*Id.* at 8)

The court and plaintiffs[11] agree with Good Times' first assertion that the Amended LOI does not obligate either party to enter into the SPA. (D.I. 11 at 16) Paragraph 8 of the Amended LOI states that "[n]either [the Amended LOI] nor any party's execution thereof shall constitute an obligation or commitment of any party to enter into [the SPA]." (D.I. 1, Ex. 1 at Ex. D, ¶ 8) Good Times' assertion on this point is inapposite, however, because plaintiffs do not seek to compel Good Times to enter into the SPA. (D.I. 1, Ex. 1) In the complaint, plaintiffs seek to compel Good Times to engage in its best efforts to close the deal the parties reached on August 12, 2019, not to enter into the SPA outright. (*Id.* at ¶ 80) Therefore, the court rejects Good Times' reasoning that because the Amended LOI does not obligate the parties to enter into the SPA, the Amended LOI also bars plaintiffs' promissory estoppel claim.

Good Times also argues that, as related to the Drive Thru transaction, paragraph 8 of the Amended LOI limits plaintiffs to claims arising out of a breach of the Amended LOI.[12] (D.I. 7 at 8) The parties agree that paragraph 8 of the Amended LOI is binding. (*Id.*; D.I. 11 at 6) The parties disagree, however, about the application of the binding language to plaintiffs' claims and the SPA. (D.I. 7 at 8; D.I. 11 at 15–16) As already stated, plaintiffs based their claims on Good Times' breach of the SPA, the contemplated "Definitive Agreement," not the Amended LOI.

---

[11] "Plaintiffs are *not* contending that the Amended Letter of Intent creates any 'obligation or commitment' to 'enter into the Definitive Agreement.'" (D.I. 11 at 16)

[12] According to Good Times, the Amended LOI constrains plaintiffs to claims "arising from: (1) breach of a covenant to exclusively deal with plaintiffs; (2) breach of the representation and warranty that Good Times has not engaged with a third-party for the sale of Drive Thru; (3) breach of the agreement to maintain confidentiality; and (4) beach of the agreement to refrain from making a public announcement." (D.I. 7 at 8 n.3)

10

(D.I. 1, Ex. 1 at ¶ 87)  Plaintiffs do not allege that Good Times breached any binding covenant in the Amended LOI.  (D.I. 1, Ex. 1)

Paragraph 8 of the Amended LOI also states that the Amended LOI does not "give any party any rights or claims against another in the event any party for any reason terminates negotiations to effect the Acquisition, other than in respect of claimed breaches of paragraphs 7, 8, 9, 10 and 11 hereof."  (D.I. 1, Ex. 1 at Ex. D, ¶ 8)  Plaintiffs do not allege any breach of the Amended LOI in connection with the parties' failure to consummate the Drive Thru sale.  (D.I. 1, Ex. 1)  Further, Good Times acknowledges that the Amended LOI and the SPA are separate and distinct.  (D.I. 12 at 8)  Good Times admits that "[p]aragraph 8 addresses the legal effect of the Amended LOI—not the SPA." (*Id.*)  Good Times also admits that "[t]he Amended LOI was one transaction; the SPA and the acquisition of Drive Thru was a wholly separate one."  (*Id.* at 4)  Good Times acknowledges that "the Amended LOI does not 'clearly relate to the same transaction' [as] the SPA.'" (*Id.*)  Good Times agreed that "[t]he Amended LOI was, by its terms, an independent transaction with its own unique legal effect."  (*Id.*)  Good Times makes factual arguments outside of the pleadings based upon its interpretation of the Amended LOI, which are not appropriate for the court to consider on a motion to dismiss.

### c. Delaware law permits plaintiffs' promissory estoppel claim

Good times argues that Delaware law prevents plaintiffs from pleading a promissory estoppel claim in the alternative in this case because a binding contract, the Amended LOI, "covers the subject matter" of the dispute here.  (D.I. 7 at 8; D.I. 12 at 9–10; D.I. 19 at 17–18)  Good Times cites *Ameristar Casinos, Inc. v. Resorts Intern. Holdings*, *LLC*, 2010 WL 1875631, at *13 (Del. Ch. May 11, 2010) and *Weiss v. Northwest Broadcasting, Inc.*, C.A. No. 99–811–GMS, 140 F. Supp. 2d 336, 345 (D. Del. 2001) for the proposition that plaintiffs cannot use

11

equitable causes of action to override the language of the Amended LOI. (D.I. 7 at 7–9; D.I. 12 at 9)

In *Ameristar*, the court dismissed claims for unjust enrichment and quantum meruit. *Ameristar*, 2010 WL 1875631, at *13.  Courts applying Delaware law "generally dismiss claims for quantum meruit on the pleadings when it is clear from the face of the complaint that there exists an express contract that clearly controls." *Id.*  Likewise, courts will dismiss unjust enrichment claims if "the complaint alleges an express enforceable contract that controls the parties' relationship." *Id.*  The court explained the policy for these Delaware rules:

> [I]f a contract covers the subject matter, the defendant's conduct either violates the contract or not.  If the defendant did not violate the contract governing the subject of the dispute, then the plaintiff cannot attempt to hold the defendant responsible by softer doctrines, and thereby obtain a better bargain than he got during the contract negotiations.

*Id.*  Although *Ameristar* did not address promissory estoppel, Good Times argues *Ameristar* applies here because "softer doctrines" includes promissory estoppel. (D.I. 19 at 18)

Even if "softer doctrines" includes promissory estoppel, *Ameristar* does not control here because the only issue before the court is whether the complaint plausibly pleads promissory estoppel.  *See id.*  Good Times' factual arguments regarding the merits of such a claim are not appropriate at this stage.

In *Weiss*, the court determined, at the summary judgment stage, that a valid, enforceable contract governed the dispute.  *Weiss*, 140 F. Supp. 2d at 344.  "[A] party cannot assert a promissory estoppel claim based on promises that contradict the terms of a valid, enforceable contract."  *Id.* (citing *Feinberg v. Saunders, Karp & Megrue*, C.A. No. 97–207–SLR, 1998 WL 863284, at *17 (D. Del. Nov. 13, 1998) (applying New York law)).  Therefore, the court granted

summary judgement and denied the plaintiff's promissory estoppel claim. *Id.* *Weiss*, however, does not directly apply here because this case has not reached the summary judgment stage.

Under Delaware law, a plaintiff may plead promissory estoppel as an alternative theory in a complaint. *See Dolan v. Altice USA, Inc.*, 2019 WL 2711280, at *12 (Del. Ch. June 27, 2019). "Typically, promissory estoppel does not apply where a fully integrated, enforceable contract governs the promise at issue; rather, the Court must look to the contract as the source of a remedy." *Id.* (internal punctuation and alterations omitted) (quoting *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013)). However, a "plaintiff may plead promissory estoppel as an alternative to breach of contract" if a defendant denies being "contractually bound to the plaintiff[] or asserts that the contract is unenforceable." *Id.* (citing *James v. United Med. Care*, LLC, 2017 WL 1224513, at *7–8 (Del. Super. Ct. Mar. 31, 2017)). Good Times argues the SPA is unenforceable and denies being bound by the SPA. (D.I. 12 at 1–3, 5–9) Therefore, the court recommends denying Good Times' motion to dismiss plaintiffs' promissory estoppel claim.

## V. CONCLUSION

For the foregoing reasons, the court recommends DENYING Good Times' motion to dismiss for failure to state a claim. (C.A. No. 19-2092, D.I. 6)

Following the expiration of the objections period and in the event the court adopts the recommendation of allowance of amendment, the court recommends that the District Court thereafter permit plaintiff fifteen (15) days to file an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 16, 2020

                                              Sherry R. Fallon
                                              United States Magistrate Judge