IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WHITE WINSTON SELECT ASSET
FUNDS, LLC., and GT ACQUISITION
GROUP,

    *Plaintiffs / Counter-Defendants,*

    v.

GOOD TIMES RESTAURANTS, INC.,

    *Defendant / Counter-Claimant.*

No. 1:19-cv-2092-SB

Richard A. Barkasy, Kristi J. Doughty, Stephen A. Fogdall, SCHNADER, HARRISON, SEGAL & LEWIS LLP, Wilmington, Delaware; Daniel M. Pereira, STRADLEY RONON STEVENS & YOUNG, LLP, Wilmington, Delaware.

    *Counsel for Plaintiffs / Counter-Defendants.*

Catherine A. Gaul, Michael Dean Walker, Jr. ASHBY & GEDDES, Wilmington, Delaware; Peter L. Loh, Davis G. Mosmeyer III, Sara A. Brown, FOLEY & LARDNER LLP, Dallas, Texas.

    *Counsel for Defendant / Counter-Claimant.*

**MEMORANDUM OPINION**

October 25, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Discovery helps unearth relevant facts. A better sense of the issues may lead a party to refine his pleadings. That is what happened here. Discovery showed that Good Times might have breached a contractual provision different from the one White Winston identified in its first complaint. So it timely moved to amend. Because its new claims are plausible and amendment will not prejudice Good Times, White Winston may amend its complaint.

## I. BACKGROUND

Good Times decided to sell its chain of burger joints, Drive Thru. It soon found a buyer: Hat Creek Burger Company. D.I. 78-1, ¶¶ 20−26. But Hat Creek could not afford Drive Thru, so it teamed up with White Winston, a private equity fund. *Id.* ¶¶ 25, 34. They agreed that White Winston would buy Drive Thru's stock from Good Times, then sell that stock to Hat Creek under a credit agreement. *Id.* ¶¶ 204−05.

To get the ball rolling, White Winston started negotiating with Good Times. By April 2019, they had settled on a price: $8 million now plus $1.75 million later. *Id.* Ex. C ¶ 1. The parties recorded this price in an Amended Letter of Intent. *Id.* Ex. C. Importantly, it required Good Times to "deal exclusively" with White Winston while negotiations were ongoing. *Id.* Ex. C ¶ 7.

They also drafted a Stock Purchase Agreement to govern the sale. *Id.* ¶ 102. Its terms, including the price, were approved by Good Times's Board. *Id.* ¶ 86. After hashing out a few final details, the parties were ready to sign—or so White Winston thought. *Id.* ¶¶ 115−19, 154, 162−66.

White Winston did not know that Good Times's CEO opposed the deal. *Id.* ¶¶ 31, 132, 145. In May 2019, he told the Board that he thought it was a "fire sale" and that Good Times should renegotiate for a better price. *Id.* ¶ 145. Then in August, just as the parties were about to sign, he asked the Board to terminate the sale and to put Drive Thru back on the market. *Id.* ¶ 152. This time, the Board agreed with him that the sale price was inadequate, and it resolved to ask White Winston to increase its offer to $11 million up front. *Id.* ¶ 170.

The about-face stunned White Winston, which thought it had a done deal. Unwilling to pay the new price, it sued Good Times. White Winston alleged that the Stock Purchase Agreement was a binding contract—though it was never signed—and that Good Times had breached that agreement by not completing the sale. D.I. 1-1 ¶¶ 72–78. Plus, even if the contract was not binding, it claimed, promissory estoppel barred Good Times from reneging. *Id.* ¶¶ 98–115. This Court refused to dismiss those claims. D.I. 24.

Now based on discovery, White Winston seeks to add two new claims. First, it says Good Times breached its express obligation to negotiate in good faith under the Amended Letter of Intent. D.I. 78-1, ¶¶ 231–60. Alternatively, it contends that Good Times breached an implied term of good faith and fair dealing in the Letter. *Id.* ¶¶ 261–74.

## II. WHITE WINSTON MAY AMEND ITS COMPLAINT

I must give leave to amend "freely … when justice so requires." Fed. R. Civ. P. 15(a). This rule "reflects a generous approach to pleading." *Dole v. Arco Chem. Co.*,

921 F.2d 484, 486–87 (3d Cir. 1990). But my discretion is bounded. Amendment is inappropriate where it would lead to "undue delay" or "undue prejudice to the opposing party" or would be "futile." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

These factors favor letting White Winston amend its complaint.

**A. White Winston's request is timely and does not prejudice Good Times**

Here, there was no delay at all, let alone *undue* delay. White Winston filed its motion within the deadline set by this Court. D.I. 78 (motion to amend); D.I. 61 ¶ 2.

"The fact that [its] Motion was filed within [that] deadline … strongly supports a conclusion that the amendment was not untimely." *Invensas Corp v. Renesas Elecs. Corp.*, 2013 WL 1776112, at *3 (D. Del. Apr. 24, 2013). Plus, White Winston could not have filed its amended complaint sooner because discovery revealed facts crucial to its new claims. Before then, it did not know that Good Times executives had plotted to undermine negotiations. D.I. 88-1, Ex. 5.

Timely filing also suggests that amendment will not prejudice Good Times. *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 2012 WL 2365905, at *2 (D. Del. June 21, 2012). Good Times should have expected an amended complaint to be filed on schedule, so it cannot claim to be surprised. Indeed, the only prejudice it identifies is its need for more discovery. D.I. 85, at 17. But "if it needs to reopen fact discovery to address the new claims, it may move for that under Fed. R. Civ. P 16(b)(4)." *Murphy Marine Servs., Inc. v. Dole Fresh Fruit Co.*, 2021 WL 810357, at *1 (D. Del. Mar. 3, 2021).

### B. White Winston's request is not futile

An amendment is futile when the updated complaint "fail[s] to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). This is the same standard that applies to a motion to dismiss. *Id.* Thus, the new complaint must contain enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To decide if White Winston's claims are plausible, I review its proposed amended complaint and the attached exhibits, including the Amended Letter of Intent. *Vorchheimer v. Phila. Owners' Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). Under this standard, amendment is not futile.

*1. White Winston plausibly claims that Good Times breached an express obligation to negotiate.* To state a claim for breach of contract, White Winston must plead that it was harmed by Good Times's failure to fulfill a contractual obligation. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Here, it does this by alleging that Good Times breached the Amended Letter of Intent. D.I. 78-1 ¶¶ 231−74.

By signing the Letter, Good Times agreed to "deal exclusively with White Winston" while the parties were "negotiating [the] sale." *Id.* Ex. C ¶ 7. But its promise would mean nothing if it could sabotage discussions to find a new buyer. A sham negotiation is no negotiation at all. *See SIGA Tech., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 344 (Del. 2013) ("[A]n express contract … to negotiate … is binding.").

And it is a "fundamental rule of construction … that an interpretation [of a contract] should be adopted … so that the contract will not be found illusory." *Hudson v. D & V Mason Contractors, Inc.*, 252 A.2d 166, 168−69 (Del. Super. Ct. 1969). Thus,

5

on a fair reading, when Good Times promised to negotiate, it agreed to do so *in good faith*, even if it did not use those magic words.

White Winston also alleges that Good Times broke that promise. It says that Good Times executives hatched a plan to demand an unreasonable sum for Drive Thru to end negotiations so Good Times could deal with other suitors. D.I. 78-1 ¶ 239. If true, that may amount to bad faith, breaching the Letter agreement. So the new complaint states a plausible claim.

*2. White Winston plausibly claims that Good Times breached an implied term of good faith and fair dealing.* Alternatively, White Winston argues that the Letter of Intent contained an *implied* covenant of good faith and fair dealing. This claim is also plausible, so White Winston may add it to the complaint.

"Under Delaware law, every contact contains an implied covenant of good faith and fair dealing, requiring the parties … to refrain from arbitrary or unreasonable conduct." *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 329 (D. Del. 2014) (internal quotation marks omitted). But an implied term cannot supplant the express terms of a contract. *Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 332 (D. Del. 2017).

Here, Good Times argues that White Winston's theory does just that. It says that the contract obligated Good Times to negotiate, but not in good faith. D.I. 85, at 13. It also claims that an express term allowed it to change the contract price. *Id.* at 15. On its view, these provisions leave no room for an implied term.

6

But this argument does not hold water. First, even if the contract is silent on whether the parties had to negotiate in good faith, implying a good-faith term to augment the exclusive-dealing provision does not contradict the plain text. The textual obligation to negotiate remains intact. Second, an implied good-faith term does not undermine Good Times's right to vary the contract price. Indeed, most good-faith negotiations involve haggling. The implied term merely limits Good Times's ability to demand an outlandish price to terminate negotiations unfairly. Because the implied term does not contradict the contract, White Winston plausibly pleads that the contract included an implied term of good faith and fair dealing.

Finally, as with its breach-of-express-contract claim, White Winston states facts that, if true, suggest that Good Times breached the contract when it abruptly raised the sale price. That is enough to plausibly state a claim.

* * * * *

White Winston's proposed amendment is timely, will not prejudice Good Times, and adds plausible claims. So it may update its complaint.