IN THE IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WHITE WINSTON SELECT ASSET FUNDS, LLC, and GT ACQUISITION GROUP, INC., | ) ) ) | |
| | ) | No. 19-CV-2092-SB |
| Plaintiffs, | ) ) | |
| v. | ) ) | **PUBLIC VERSION** |
| | ) | **Filed February 7, 2022** |
| GOOD TIMES RESTAURANTS INC., | ) ) | |
| Defendant. | ) | |

---

**APPENDIX**

GOOD TIMES'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS
OF DEFENDANT'S EXPERT YVETTE AUSTIN SMITH

---

Dated: February 1, 2022

*Of Counsel*

**ASHBY & GEDDES**

Catherine A. Gaul (#4310)
Michael D. Walker (#6619)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19801
(302) 654-1888
cgaul@ashbygeddes.com
mwalker@ashbygeddes.com

**FOLEY & LARDNER LLP**

Peter L. Loh
admitted pro hac vice
Sara A. Brown
admitted pro hac vice
Davis G. Mosmeyer III
admitted pro hac vice
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
(214) 999-3000
ploh@foley.com
sabrown@foley.com
dmosmeyer@foley.com

*Attorneys for Defendant*
*Good Times Restaurants Inc.*

# TABLE OF CONTENTS

| # | DESCRIPTION | PAGE |
|---|---|---|
| TAB 1 | **Excerpts from Deposition of Robert Mahoney** <br> May 18, 2021 | 3 |
| TAB 2 | **Excerpts from Deposition of Todd Enright** (Individual) <br> May 19, 2021 | 5 |
| TAB 3 | **Excerpts from Deposition of GTAG** <br> (Todd Enright, Corp. Rep.) <br> June 22, 2021 | 9 |
| TAB 4 | **Excerpts from Deposition of White Winston** <br> (Todd Enright, Corp. Rep.) <br> June 24, 2021 | 15 |
| TAB 5 | **Excerpts from Deposition of White Winston/GTAG** <br> (Todd Enright, Corp. Rep.) <br> November 30, 2021 | 20 |

| TAB 1 | EXCERPTS FROM DEPOSITION OF ROBERT MAHONEY |
|---|---|
| | MAY 18, 2021 |

Counsel for Good Times created the following deposition excerpts from the original, electronic copies of depositions taken in this case, using the iPad app TranscriptPad. Copies of the original transcripts are available upon request to sabrown@foley.com

| Case | White Winston V. GTRI |
|---|---|
| Issue Code | Exceprts - Response to Austin Smith Motion |

| MAHONEY, ROBERT 5/18/21 VOL 1 | | |
|---|---|---|
| 1 | 108:25 - 109:07 | 108:25   Q.   And how did you know that all the<br>109:01   critical terms had been agreed?<br>A.   How did we know?<br>Q.   Uh-huh.<br>A.   The old expression that Potter Stewart had at the Supreme Court, I know when I see it.  I knew it.  I knew it.  I was comfortable that all terms were met. |

Appendix - Response to Motion to Exclude Austin Smith
App. 4

| TAB 2 | **EXCERPTS FROM DEPOSITION OF TODD ENRIGHT** (INDIVIDUAL) MAY 19, 2021 |
|---|---|

Counsel for Good Times created the following deposition excerpts from the original, electronic copies of depositions taken in this case, using the iPad app TranscriptPad. Copies of the original transcripts are available upon request to sabrown@foley.com

| Case | White Winston V. GTRI |
|---|---|
| Issue Code | Exceprts - Response to Austin Smith Motion |

| ENRIGHT, TODD 5/19/21 VOL 1 | | | |
|---|---|---|---|
| 1 | 113:14 - 114:25 | 113:14 | Q.    And by "binding," Mr. Enright, do you mean that the -- that those particular terms are -- carry with them some type of legal obligation that can then be enforced by the counterparty against the other party?<br>    A.    Yes.  A binding term and condition obligates each party -- my understanding is binding term and condition obligates each party to perform based on a representation or warranty.  And by failing to honor that obligation, they take on liability.<br>    Q.    And which can then be enforced through some kind of legal proceeding.  Is that your understanding?<br>    A.    That would be my understanding, yes.<br>    Q.    I don't believe that you testified that you had any legal training, so I'm not asking you to act like a lawyer here.  I'm just trying to understand what your kind of business person's understanding of that is.<br>    A.    In general, my business person's understanding of what a binding obligation is -- is the obligation taken on with both parties?  But, again, I'm not a lawyer.  I'm not trained as a lawyer, so my obligation of what a binding obligation is, you know, is when, you know, effectively -- I think Bob said yesterday, it's the old Potter Stewart:  I know it when I see it, right?<br>        In a binding -- obligation or a binding agreement is when, you know, parties have reached all material terms of the underlying agreement and there's nothing left to be negotiated or determined.  That's my understanding, as a layperson, of a binding agreement. |

| 2 | 131:20 - 133:22 | |
|---|---|---|

131:20 But as a general rule, forget about just sort of setting -- setting the legal document aside, parties engage in LOIs to set out the general material terms in the undertakings that each party has with respect to trying to put that deal together.  At a

132:01 point which is generally defined in that LOI, right, the parties reach a definitive agreement.  And that agreement generally becomes binding on the parties when the parties have reached all material terms relative to that.

When that happens, when that magic moment happens, right -- but it's not like voila, it happens.  It's not like, hey, we've reached our binding agreement.  Right?

It's because transactions are complicated and have lots of provisions, right?  Those provisions -- any transactional lawyer knows those provisions get knocked down one at a time.  All right.  Well, we've reached agreement on that; we've reached agreement on this; we've reached agreement, you know, on that.  And there is a point at which all the material terms are reached.  Right?  And the parties -- and the parties know when that is.  As we said, the Potter Stewart.  Right?

And that might be as simple as great, Peter, we've reached agreement, I'm wiring you the 10 grand.  Or hey, we good?  Yeah, we're good.  All right.  Great.  Let's

133:01 pop the champagne.  Right?

So it's somewhat anticlimactic in most theoretical world, because it's not like you have this sort of penultimate, you know, thing where it all happens in, you know, this -- it happens over time because it's iterative.  We're going back.  Oh, we've got a problem.  These parties are acting in good faith.  They want to get this deal done.  Everybody wants to get the deal done.  They're telling the other side, we want to get this deal done.  Right?  Oh, well, we've got this

| | | |
|---|---|---|
| | | problem here or we've got this problem there. |
| | | And so what happens is they work collectively through it.  Right?  And then magically, right, that definitive agreement is reached, it is binding, it is binding on the parties because they've reached all the material terms of that agreement.  And that can be expressed, you know, verbally, in an email.  You know, it's just kind of how it -- you know, theoretically, how it works. |
| 3 | 143:02 - 144:08 | 143:02 Q.  Going back to the kind of hypothetical acquisition transaction we've been talking to; within the context of due diligence and these other things that are going on, do the parties also typically, in your experience, make representations to one another at some point in time?<br><br>A.  Well, generally, the representations are set forth in -- generally, representations with respect to undertakings vis-a-vis a letter of intent are contained in the letter of intent.  Right?  What the parties are going to do.  Will a -- will a party make a representation to another party?  Well, certainly, particularly more so on the seller's position, right?  Because they're producing a lot of the documentation for which the underlying acquirer is going to -- is going to rely on that.<br><br>And, you know, again, there is -- the undertakings and representations that are included in the letter of documentation, period, sort of full stop.  Beyond that -- again, I'm not a lawyer, so I'm not going to 144:01 get into or try to speculate about what other obligations parties have in the context of an agreement, right, a contract, outside of the four corners of the written agreement.  I'm not going to speculate as to what their obligations may also include irrespective of what's included with respect to those undertakings in the document itself. |

Appendix - Response to Motion to Exclude Austin Smith
App. 8

| TAB 3 | EXCERPTS FROM DEPOSITION OF GTAG (TODD ENRIGHT, CORP. REP.) JUNE 22, 2021 |
|---|---|

Counsel for Good Times created the following deposition excerpts from the original, electronic copies of depositions taken in this case, using the iPad app TranscriptPad. Copies of the original transcripts are available upon request to sabrown@foley.com

| Case | White Winston V. GTRI |
|---|---|
| Issue Code | Exceprts - Response to Austin Smith Motion |

| GTAG, Corporate Rep 6/22/21 VOL 1 | | |
|---|---|---|
| 1 | 046:14 - 046:22 | Q.    Is it a statement of GTAG's claims in this lawsuit?<br>        MR. FOGDALL:  Objection.<br>A.    I just am -- I mean, I think that calls for some variety of a legal conclusion and I just -- I'm not a lawyer.  I don't really want to get into that.  I think what it -- it says what it says and you can infer from that.  The document ostensibly speaks for itself. |
| 2 | 055:19 - 056:02 | Q.    Where are the material terms that comprise this supposedly legally binding agreement that you've referred to?<br>        MR. FOGDALL:  Objection.<br>A.    The terms are included in the body of documents from the initial letter of intent through the stock purchase agreement and the writings and agreements of the parties contained in the various e-mails and conversations. |
| 3 | 056:13 - 056:22 | Q.    Aside from the stock purchase agreement that is depicted here at Exhibit 1-A, you also said, I believe, correspondence between the parties can depict material terms for this agreement between Drive Thru and GTAG.  What specific correspondence are you referring to?<br>A.    There are several e-mails between myself, Boyd Hoback, Ryan Zink, which constitute agreements relative to the parties that make up portions of the stock purchase agreement. |
| 4 | 057:03 - 057:14 | Q.    And these conversations took place where and under what circumstances?  Over the phone?  In person?  Could you specify what you're talking about with regard to conversations?<br>A.    Well, over the course of the six to nine months, there were several occasions where we agreed to certain aspects of the transaction that were ultimately embodied in the agreement when we |

| | | |
|---|---|---|
| | | reached all sort of final material terms. And that could have happened over a relative period of time as you approved an exhibit for a particular part of the transaction. |
| 5 | 074:08 - 075:08 | 074:08 Q. The President is hereby authorized and empowered to execute and deliver such Stock Purchase Agreement, in the name and on behalf of the Corporation, with such changes as he may approve, his signature being conclusive evidence of such document as the document (with approved changes, if any) authorized by this written consent.<br><br>Do you see that language?<br>A. I do.<br>Q. What is this doing? What is the purpose of this document?<br>MR. FOGDALL: Objection.<br>You can answer.<br>A. Again, I'm going to -- I'm going to answer your question. If you're asking me about a legal question, again, I'm just going to go back to, you know, I'm not a lawyer and I'm not qualified to answer that.<br>075:01 In general, however, as it relates to, you know, sort of any sort of transaction taken as sort of a whole, there are certain undertakings that are prepared in conjunction with a -- with a transaction, for lack of a better term, to paper the file, and -- the corporate file, and my understanding is that's what this -- these documents do. |
| 6 | 110:05 - 110:23 | 110:05 Q. Is the valid, binding contract that's referred to in paragraph 80 on page 22 of Exhibit 1 the only, quote/unquote, valid, binding contract that supposedly exists between GTAG and Good Times in this lawsuit?<br>MR. FOGDALL: Objection.<br>You can answer.<br>A. I mean, again, now I think you're getting into this question about drawing a legal conclusion relative to this. I think what I've -- what I have testified to earlier today is the existence of a legally binding and enforceable agreement with |

Appendix - Response to Motion to Exclude Austin Smith
App. 11

| | | |
|---|---|---|
| | | respect to Good Times and Drive Thru and White Winston and GTAG memorialized through a series of documents and writings which evidence the parties' agreement.  And I think I indicated to you in earlier testimony as well, that the stock purchase agreement referenced in 1-A includes portions of that agreement. |
| 7 | 122:16 - 123:07 | 122:16 **How did Good Times demonstrate its intent to be bound to all substantial terms of the stock purchase agreement as stated in this paragraph 52?** A.   Again, you know, you're asking me to answer what is your legal conclusion about something.  You know, what I can say is this, relative to my understanding and GTAG's understanding as the corporate representative, is that over the period of time from, you know, when we started letter of intent through coming to drafts of the SPA and then working through the exhibits and documents, there was a point at which all the material terms of the agreement to acquire the stock had been reached.  And as I said earlier, those terms were reflected over a period of time in several different documents, also included in e-mails and writings of the parties. |
| 8 | 132:23 - 133:03 | 132:23 **Is there any writing or correspondence or verbal statement by Mr. Zink or anybody on behalf of Good Times to you or anyone else on behalf of GTAG or White Winston, to the effect of we agree to all the substantial terms in the stock purchase agreement as alleged in paragraph 52?** |
| 9 | 133:06 - 133:11 | 133:06 A.   You've asked this question now about five different ways and I've answered it.  And on the last occasion, I specifically stated that there was no single document that was signed enumerating all the terms and conditions of what have -- a voluminous record. |
| 10 | 199:21 - 200:09 | 199:21 Q.   **Does GTAG have any evidence that the seller had the authority to execute and deliver this agreement?** MR. FOGDALL:  Objection. You can answer. A.   So again, here's where we're going to |

| | | |
|---|---|---|
| | | wade into a legal conclusion and I'm not a lawyer. So if you're asking me authority with a capital A, I don't think it's appropriate for me to answer that. |
| | | If you're asking me as a representative of GTAG whether or not GTAG believed it had a binding and enforceable agreement with the company, yes, we believe we had a binding and enforceable agreement with the company. |
| 11 | 213:13 - 213:22 | **Q.   And if those documents are not referenced or referred to in Exhibit 1-A, how can they be part of the parties' agreement?** MR. FOGDALL:  Objection. You can answer. A.   Now you're asking for a legal conclusion about what Section 11.8 means.  As I have testified earlier today, I'm not going to testify relative to an area which I am not an expert on or a lawyer licensed to practice law. |
| 12 | 217:23 - 218:10 | A.   Well, it sort of as a general matter parties -- parties move through negotiation over time and I think I've testified to this today, in terms of reaching an agreement regarding, in this case, the stock purchase agreement.  And as you get -- you know, you sort of -- as you get close to the end, ultimately your intention is to sign the document which memorializes in full that agreement which the parties have had. But there becomes a point at which, irrespective of whether the SPA is executed or not, where the terms of the agreement to sell and to buy become binding and enforceable on those parties. |
| 13 | 221:13 - 222:10 | **Q.   And so what's the point of signing if you have a binding enforceable agreement?** MR. FOGDALL:  Objection. You can answer. A.   I just answered that question. BY MR. LOH: **Q.   You said something about corporate practice.  Is that your answer?** A.   Yeah.  It's corporate housekeeping, it's corporate practice.  What you're conflating is an agreement between the parties and the execute of a |

2/1/22

Appendix - Response to Motion to Exclude Austin Smith

document.  Right.

The agreement exists, right, when we've reached all material terms, and we've discussed that today and on the last occasion, right.  Separate and apart from that, the execution of the document in and of itself is what I've testified to.  Yes, of course you want an executed document.  It is good corporate housekeeping.

But that doesn't novate the fact that the parties had reached an agreement on the sale of the stock, and I think that is evidenced in the record and we've discussed that today at length.

| TAB 4 | **EXCERPTS FROM DEPOSITION OF** WHITE WINSTON (TODD ENRIGHT, CORP. REP.) JUNE 24, 2021 |
|-------|-------|

Counsel for Good Times created the following deposition excerpts from the original, electronic copies of depositions taken in this case, using the iPad app TranscriptPad. Copies of the original transcripts are available upon request to sabrown@foley.com

| Case | White Winston V. GTRI |
|---|---|
| Issue Code | Exceprts - Response to Austin Smith Motion |

| White Winston, Corporate Rep 6/24/21 VOL 1 | | |
|---|---|---|
| 1 | 106:15 - 107:15 | 106:15  Q.   So again, just as a layperson, it's your testimony on behalf of White Winston that there was some point in time and some correspondence prior to the signing of this letter when Good Times indicated to you it was agreeing to this Exclusive Dealings provision outlined in paragraph 7 of this letter in Exhibit No. 52?<br><br>MR. FOGDALL:  Objection.<br><br>You can answer.<br><br>A.   No, I think what I said was somewhat different.  There may have come a time -- so if we go back and we look at this in a couple different ways, and we're talking about a letter of intent here, but we say there's a point in which all of the materials terms of the agreement, right, have been -- have been reached between the parties.  And that's when the agreement, quote, becomes binding and enforceable, whatever that agreement is, period, full stop.<br><br>Then I said, well, the best evidence of that agreement, right, would exist in the -- in the form of a signed document, to the extent the signed document existed, that comported with those terms.<br><br>But I'm not saying that you have to have the signed agreement, right, to have the agreement be binding and enforceable. |
| 2 | 108:02 - 109:10 | 108:02  Q.   So if there's no objective demonstration of agreement by the parties on this term prior to signing, would you say, then, that the signing is the best evidence of an agreement on this term?<br><br>MR. FOGDALL:  Objection.<br><br>You can answer.<br><br>A.   Now you're getting into -- now you're squarely within the kind of legal question context. If you're -- if you're asking me if a term is a material term of an agreement or not, I think the materiality, one out of several provisions of what |

the parties agreed to, A, could be -- could be determined by the writings, the documents, the back and forth, the e-mails, yes, no, add, subtract, multiply, divide, right, could be determined.  And I'm talking about now in the abstract.  Right.

And then what I've said is, I'm not -- I can't testify to that today with respect to this Section 7 without refreshing my recollection and reviewing the record.  E-mails, the marked documents, sort of all of that stuff.  Right.  But sort of, you know, generally as I've testified to, that the existence of an agreement in all material -- as to all material terms that is evidenced through redlines or blacklines as I used to call them, because back in the day, laser printers didn't print red, they only printed black so everything was striked through and double-lined, the best evidence of that will be markups, there will be e-mails, there will be correspondence or what have you, the recollections or the testimony of the parties.  Right.  And that -- and that's all I'm saying.  Full stop, agreement reached, right, as to all those material terms.

| 3 | 110:15 - 111:02 | So there are frameworks that we -- that we live in that set parameters about materiality.  And that changes depending on the facts and circumstances.  So to simply say, well, what's material or what's not material, in the abstract it's very difficult to do that. |
| | | In a lot of respects, you know, Potter Stewart summed it up, right, I know it when I see it.  Right.  I know when I see pornography sort of what pornography is.  And so if you gave me a specific example of, well, you know, what was material or not, had you reached agreement or not, I think it depends on the facts and circumstances. |
| 4 | 135:19 - 136:07 | **Do you know if Mr. Hoback viewed this as a material issue?** |
| | | MR. FOGDALL:  Objection. |
| | | A.   I don't know if he deemed it a material issue or not.  I don't have -- I don't know, to know what his thought process is. |

| | | |
|---|---|---|
| | | But given that I brought it up, right, and it was something that needed to be addressed or resolved, right, in order for the parties to have, you know, reached a material -- reached an agreement on all material terms, if it's material for me and we don't reach agreement on how we're going to do it, we haven't -- we haven't reached agreement on all material terms effectively. |
| 5 | 183:14 - 185:16 | **Q.    I want to clarify something that you just said above about other obligations.  I guess what I'm trying to understand is, if it's not mentioned in paragraphs 7, 8, 9, 10 or 11 in this document, Exhibit No. 58, what potential claims could a party have based upon your reading of the document?**<br><br>MR. FOGDALL:  Objection.<br><br>You can answer the question.<br><br>A.    I'm going to give you a perfect example and a little preview.  Section -- I forget what the -- so, for example -- again, I'm not going to -- we've had a lot of discussions about legal conclusions and that I'm not qualified.  So I'm going to kind of articulate this the best I can as a business person who obviously has engaged in a lot of transactions that sort of deal with contracts and things that are arising from it.  And we've talked a little bit about good faith, bad faith and the things that arise, you know, sort of therefrom.<br><br>Section 7 is a binding -- is a section which is binding on the company regarding exclusivity.  And while it -- while it -- while it may be true that Section 1 regarding the purchase price isn't binding and enforceable, in my understanding if it -- if a party -- if a party acts in bad faith, for example, by asking $4 million more than the parties had negotiated in good faith and they did it for the purpose of terminating exclusivity, a party could have a claim for that.<br>BY MR. LOH:<br>**Q.    Is that said anywhere in Exhibit No. 58?**<br><br>MR. FOGDALL:  Objection.<br><br>You can answer.<br>A.    Is what said? |

BY MR. LOH:

Q.    Well, is that scenario that you just outlined, is that -- is that articulated anywhere that that could give rise to a claim by White Winston?

MR. FOGDALL:  Objection.

You can answer.

A.    I don't know if -- I don't know if that is included in the language of the document and I think I qualified it by saying that I'm not a lawyer and it calls for a legal conclusion.

But as a layperson who has done acquisitions and transactions before, that the construct of bad faith obviously exists.  And to the extent that Section 7 regarding exclusivity is purposefully undermined through an act of bad faith, I think that that -- that gives potential cause for a claim.

BY MR. LOH:

| | |
|---|---|
| **TAB 5** | **EXCERPTS FROM DEPOSITION OF WHITE WINSTON/GTAG** (TODD ENRIGHT, CORP. REP.) November 30, 2021 |

Counsel for Good Times created the following deposition excerpts from the original, electronic copies of depositions taken in this case, using the iPad app TranscriptPad. Copies of the original transcripts are available upon request to sabrown@foley.com

| Case | White Winston V. GTRI |
|---|---|
| Issue Code | Exceprts - Response to Austin Smith Motion |

| ENRIGHT, TODD 11/30/21 VOL 1 | | | |
|---|---|---|---|
| 1 | 022:17 - 023:15 | 022:17 | Q    And is it -- are the plaintiffs actually alleging that Good Times breached or dealt with someone other than White Winston?<br><br>MR. FOGDALL:  Objection.<br><br>BY MS. BROWN:<br><br>Q    Is that the allegation?<br><br>MR. FOGDALL:  Objection.<br><br>You can answer the question.<br><br>THE WITNESS:  Yeah, so first, let's -- let's just back up.  I'm just going to make a general statement that you're asking me to draw legal conclusions about something that's included in a complaint.<br><br>So, first and foremost, I'm going to say that, look, I'm not a lawyer.  I'm not going to give you a recitation on what the law or the facts are in this case.  I'm happy to -- I'm happy to convey to you my understanding as a business layperson about what we believe transpired, but with respect to the underlying, you know, legal claim or the legal reasoning behind that, I think that's included in the actual underlying complaint itself. |