IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WHITE WINSTON SELECT ASSET
FUNDS, LLC, and GT ACQUISITION
GROUP, INC.,

    *Plaintiffs / Counter-Defendants,*

    v.

GOOD TIMES RESTAURANTS, INC.,

    *Defendant / Counter-Claimant.*

No. 1:19-cv-2092-SB

---

Richard Alan Barkasy, Kristi JoLynn Doughty, Stephen A. Fogdall, SCHNADER HARRISON SEGAL & LEWIS LLP, Wilmington, Delaware.

    *Counsel for Plaintiffs / Counter-Defendants.*

Catherine A. Gaul, Michael Dean Walker, Jr., ASHBY & GEDDES, Wilmington, Delaware; Peter L. Loh, Davis G. Mosmeyer III, Sara A. Brown, FOLEY & LARDNER LLP, Dallas, Texas.

    *Counsel for Defendant / Counter-Claimant.*

---

**MEMORANDUM OPINION**

May 25, 2022

BIBAS, *Circuit Judge*, sitting by designation.

Preliminary agreements to negotiate in good faith make business dealings less risky. But good-faith provisions do not bind the parties to reach a final deal. So when one party breaches, usually the other can recover only the amount he lost relying on the promise to negotiate. Unless the preliminary agreement also binds the parties to some terms of the final deal, he cannot recover the amount he would have made if that deal had gone through.

Here, White Winston and Good Times signed a Letter of Intent, binding them to negotiate in good faith. Because that Letter did not commit them to any of the terms of the final deal, White Winston may recover only reliance damages.

## I. BACKGROUND

White Winston bartered with Good Times to buy its chain of burger joints, Drive Thru. D.I. 96 ¶¶ 20–34. To ease discussions, the parties signed a preliminary Letter of Intent, committing them to "deal exclusively" with each other in good faith. D.I. 111-3, at 755–56; Mem. Op., D.I. 93, at 5. But just as the parties were about to sign a final contract, Good Times tanked the sale by raising its price. D.I. 96 ¶ 170.

I have narrowed the case to just one claim: was Good Times's price demand a bad-faith tactic of the sort barred by the Letter? *See* Mem. Op., D.I. 152 (granting summary judgment in part and providing detailed facts). The answer must wait for trial. But to focus the issues, the parties have asked me to decide how much money White Winston could recover if Good Times *did* breach the Letter. D.I. 156.

2

The parties disagree over how to decide that amount. White Winston says it can get *expectation* damages—the amount of money it would have made had Good Times signed the final deal. D.I. 157, at 1. Pushing back, Good Times points out that the parties neither signed the final deal nor agreed to any of its key terms. So, it says, recovery should be limited to *reliance* damages—the amount White Winston lost by counting on Good Times's promise to deal in good faith. D.I. 156, at 2. That difference matters. Expectation damages are around $18 million, while reliance damages are about $5 million. *Id.* (Of course, the parties will contest the actual amounts at trial).

To help decide, I heard argument at a pretrial conference. I now answer the damages question to "simplify[] the issues" for trial. Fed. R. Civ. P. 16(c)(2)(A).

## II. WHITE WINSTON MAY GET ONLY RELIANCE DAMAGES

In Delaware, damages for breach of a preliminary agreement depend on the agreement's terms. *See SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 349–50 (Del. 2013) (*SIGA Techs. I*). The fewer final-deal terms the preliminary agreement nails down, the less likely it is that parties can recover expectation damages. *Id.* Here, the Letter did not bind the parties to any final-deal terms, so White Winston may recover only reliance damages.

### A. The Letter does not fit into Delaware's types of preliminary agreement

Delaware courts recognize two established categories of preliminary agreement with a different damages analysis for each. But the Letter does not fit into either box.

Type I agreements "reflect a consensus on all the points that require negotiation but indicate the mutual desire to memorialize the pact in a more formal document." *Cox Commc'ns, Inc. v. T-Mobile US, Inc.,* 2022 WL 619700, at *6 (Del. Mar. 3, 2022)

3

(cleaned up). Those agreements are "fully binding," and expectation damages are always available for breach. *SIGA Techs. I*, 67 A. 3d at 349 n.82.

Type II preliminary agreements lock in less of the final deal. They "do[ ] not commit the parties to their ultimate contractual objective," but instead require them "to negotiate the open issues in good faith." *Id.* at 349 (cleaned up). Still, to form a Type II agreement, the parties must "agree on certain major terms." *Id.* Thus, in *SIGA Technologies*, the parties agreed to negotiate for terms "substantially similar" to those laid out in a term sheet. 67 A.3d at 337, 346. Similarly, in *Cox Communications*, a settlement contract "reflect[ed] agreement on certain major terms" by stipulating that one company would enjoy preferred status with another for a set time, even if other provisions were still to be decided. 2022 WL 619700, at *6 (cleaned up).

Damages for breach of a Type II agreement depend on whether the trial judge "makes a factual finding … that the parties would have reached an agreement but for the defendant's bad faith negotiations." *SIGA Techs. II*, 67 A.3d at 351. If he does, the plaintiff can get expectation damages; if not, the plaintiff gets reliance damages.

The Letter of Intent does not fit neatly into either category. It is not a Type I agreement because it did not "reflect a consensus" on "all" the terms of the final deal. *Cox Commc'ns*, 2022 WL 619700, at *6. Nor is it a Type II agreement because it did not commit the parties to "certain major terms" of the final deal. *SIGA Techs. II*, 67 A.3d at 349. Indeed, the Letter did not bind the parties to *any* major terms. True, it memorialized the parties' tentative assent to a sale price, deal structure, and financing. D.I. 111-3, at 752−56. But it also said that those terms were "not binding," had

4

"no legal effect," and did not "constitute an obligation or commitment … to enter [the final deal]." *Id.* at 755–56.

### B. Because the Letter is a Type III contract, reliance damages are proper

Because the Letter is not a Type I or a Type II agreement, it falls into a gap in Delaware's caselaw. So I must predict what the Delaware Supreme Court would do with this question. *See, e.g.*, *United States v. Defreitas*, 29 F.4th 135, 141 (3d Cir. 2022).

It would likely recognize a third category of preliminary agreement—Type III—for which only reliance damages are available. Type III agreements are formed when parties sign a binding contact to negotiate in good faith but do not agree to any of the final deal's key terms. For such a contract, expectation damages can never be calculated because the preliminary agreement does not nail down enough of the final deal. *Cf. SIGA Techs. I*, 676 A.3d at 351 n.99 ("[E]xpectation damages … presuppose[] that the plaintiff can prove damages with reasonable certainty.").

Indeed, the leading Delaware case on preliminary agreements hints at this third category. When it developed the Type I–II dichotomy in *SIGA Technologies*, the Delaware Supreme Court cited approvingly *Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc.*, 519 F.3d 421, 430 (8th Cir. 2008). *See* 67 A.3d at 349. There, the Eighth Circuit allowed only reliance damages where a preliminary agreement was "silent on significant issues," making it impossible to work out expectation damages. *Fairbrook Leasing*, 519 F.3d at 430. And the court could not supply those terms: doing so would "judicially …. transform a binding preliminary agreement to negotiate for a contract into the contract itself." *Id.*

5

Plus, lower Delaware courts have held that reliance damages are the appropriate measure for bare agreements to negotiate in good faith. *See, e.g.*, *Gillenardo v. Connor Broad. Del. Co.*, 2002 WL 991110, at *5, 11 (Del. Super. Ct. Apr. 30, 2002) (upholding reliance damages for breach of a letter of intent committing the parties to negotiate in good faith but leaving "the final terms … to be negotiated.").

The Letter here resembles the contracts in *Fairbrook Leasing* and *Gillenardo*. Though it binds White Winston and Good Times to negotiate in good faith, it does not commit to final terms or offer enough information to calculate expectation damages. D.I. 111-3, at 755−56; Mem. Op., D.I. 152, at 4. True, when negotiations stalled, White Winston had offered to buy Drive Thru's stock for $8 million up front plus $1.75 million later. D.I. 96, Ex. C. But without a commitment, the parties could have restructured the deal (perhaps as an asset sale of some or all the stores) or changed the price. And revamping any of those terms would change the expectation measure. Thus, the Letter is a Type III agreement and only reliance damages are available.

**C. I do not have equitable discretion to award a disgorgement remedy**

At argument on damages, White Winston contended that I have equitable discretion to award unjust-enrichment damages for breach of the Letter. Not so.

White Winston's theory rests on a crumbling foundation: Vice Chancellor Parsons's initial ruling in *SIGA Techs.*, 2011 WL 4390726 (Del. Ch. Sept. 22, 2011). There, he imposed an equitable lien on the breaching party's income stream. *Id.* at *34. Yet that ruling was reversed on appeal. 67 A.3d at 351–52. And on remand, the Vice Chancellor awarded expectation damages for breach of a Type-II agreement instead. *See Siga Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1136 (Del. 2015)

6

(*SIGA Techs. II*) (upholding that award). Thus, no authority supports awarding a disgorgement remedy here.

\* \* \* \* \*

The parties' Letter of Intent bound them to negotiate in good faith but did not commit them to any of the terms of the final deal. So White Winston may recover only reliance damages.