IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WHITE WINSTON SELECT
ASSET FUNDS, LLC; GT
ACQUISITION GROUP, INC.

    *Plaintiffs / Counter-Defendants.*

        v.

No. 19-cv-02092-SB

GOOD TIMES RESTAURANTS, INC.,

    *Defendant / Counter-Claimant.*

---

David A. Felice, BAILEY & GLASER LLP, Wilmington, Delaware; Mazin A. Sbaiti, SBAITI & COMPANY; Stephen A. Fogdall, Thaddeus James Weaver, DILWORTH PAXON LLP, Philadelphia, Pennsylvania.

*Counsel for Plaintiffs.*

Catherine A. Gaul, Michael Dean Walker, Jr., ASHBY & GEDDES, Wilmington, Delaware; Davis G. Mosmeyer III, Peter L. Loh, Sara A. Brown, FOLEY & LARDNER LLP, Dallas, Texas.

*Counsel for Defendant.*

---

MEMORANDUM OPINION

July 17, 2025

BIBAS, *Circuit Judge*, sitting by designation.

    White Winston objects to the Special Master's calculation of the damages that it owes for filing a wrongful lawsuit. But none of White Winston's objections has merit. So I adopt the Special Master's report and recommendation in full, awarding $3,826,715.07 in damages plus pre-judgment and post-judgment interest.

1

## I. BACKGROUND

It all started with a deal gone wrong. After an asset-management firm called White Winston wanted to buy a burger chain owned by another company called Good Times, the parties signed a letter of intent to structure their negotiations. D.I. 204 ¶¶ 11–12. Later, they amended the letter. *Id.* ¶ 18. The letter was careful not to create liability. Paragraph 8 specified that it was not binding: "Neither [the] letter nor any party's execution thereof shall … give any party any rights or claims against another in the event" negotiations fell apart. D.I. 235 at 2. But liability could arise in narrow circumstances. For example, paragraph 7 required Good Times to "deal exclusively with White Winston" in connection with the purchase. *Id.* And if it did not, White Winston could sue. D.I. 204 ¶ 20. On the eve of the sale, Good Times demanded additional cash, tanking the deal. *Id.* ¶¶ 32, 43–45. White Winston then sued Good Times for breach of an unsigned stock-purchase agreement the parties had drafted, breach of the amended letter, and promissory estoppel. D.I. 152 at 3. Good Times countersued, arguing that White Winston had breached the letter by suing because all of White Winston's claims were barred by paragraph 8. *Id.*

Before trial, I ruled that White Winston could not sue for breach of the unsigned stock-purchase agreement or promissory estoppel. D.I. 152 at 7–11. I also held that Good Times could not bring its counterclaims. *Id.* at 6–7. I read paragraph 7 of the amended letter to impose a "binding obligation to negotiate in good faith," because "Good Times's promise to deal exclusively with White Winston … would mean nothing if it could sabotage discussions to find a new buyer. *Id.* at 4 (internal

quotation marks omitted). Then I reasoned that because all of White Winston's claims effectively accused Good Times of the same misconduct—tanking the deal in bad faith—they fell within the carveout to paragraph 8's nonsuit provision. *Id.* at 7. After a bench trial on White Winston's remaining claims for breach of the amended letter, I found that Good Times had not acted in bad faith and entered judgment in its favor. D.I. 204 at 62.

Both parties appealed. The Third Circuit affirmed my post-trial finding that Good Times had not acted in bad faith. D.I. 212-1 at 4–6. Yet it reversed my grant of summary judgment to White Winston on Good Times's counterclaims because "White Winston's claims … [did] not rest on Paragraph 7's exclusive dealings clause," but rather on "the *implied* covenant of good faith and fair dealing." *Id.* at 8. The court explained that breaches of that covenant were "not an exception" to paragraph 8's nonsuit provision, so "Good Times should never have been forced to defend itself in this litigation." *Id.* The Third Circuit then remanded to calculate the damages that Good Times had suffered because of White Winston's "initiation of a wrongful suit." *Id.* at 9.

I appointed Chad Stover as a Special Master to "calculate the damages owed to Good Times Restaurants." D.I. 217 at 1. I am grateful for his service to the Court. The Special Master recommended awarding the "reasonable litigation expenses incurred by Good Times since the initiation of this litigation." D.I. 235 at 1. White Winston objected to the Special Master's recommendation. D.I. 241, D.I. 242. I review those objections de novo. Fed. R. Civ. P. 53(f)(3).

## II.   I ADOPT THE SPECIAL MASTER'S REPORT AND RECOMMENDATION

The Special Master found that Good Times had suffered $3,826,715.07 in damages from White Winston's lawsuit. D.I. 235 at 12. The Third Circuit, he explained, had

3

held that "*all* of White Winston's claims" violated paragraph 8 of the amended letter. D.I. 235 at 8 (internal quotation marks omitted). So Good Times was entitled to recover the money that it spent defending against the wrongful suit. *Id.* at 12. At first, Good Times asked for $3,850,743.07 in litigation expenses. *Id.* at 10. The Special Master concluded that $24,028 of those expenses were not a reasonably foreseeable product of White Winston's breach, so he subtracted that amount. *Id.* Then he added in pre-judgment and post-judgment interest on top of that, tallying up to his final recommendation. *Id.*

White Winston makes two broad objections to the Special Master's damages calculation. But both miss the mark.

### A. The Special Master correctly calculated damages arising from White Winston's suit as a whole

White Winston first argues that only some of its claims breached its promise not to sue. As White Winston sees things, it owes only what Good Times spent defending against those barred claims—not the whole suit. D.I. 242 at 7–11. But that argument loses three ways. First, White Winston forfeited it. Second, it is squarely foreclosed by the Third Circuit's mandate. And third, it is meritless.

#### 1. White Winston forfeited the argument for analyzing claim by claim

"An issue is waived on remand if it was not raised in a party's prior appeal." *In re Titus*, 916 F.3d 293 (3d Cir. 2019) (internal quotation marks omitted). In White Winston's response to Good Times's cross-appeal, it made three arguments: (1) paragraph 8 of the amended letter was not a covenant not to sue; (2) even if it was, "Paragraph 7 form[ed] the basis of White Winston's suit," falling within paragraph

4

8's carveout; and (3) in the alternative, White Winston's "action could not have breached any purported implied covenant" of good faith and fair dealing. D.I. 228 at 250–57 (internal quotation marks omitted). Each of those arguments treated White Winston's suit as a single unit. White Winston did not argue, even in the alternative, that only some of its claims violated the amended letter.

Then White Winston again failed to raise this argument after the Third Circuit issued its decision. In petitioning for panel rehearing, White Winston instead contended that the panel had improperly "concluded that Delaware would allow attorneys' fees as damages for breach of a covenant not to sue." D.I. 223-3 at 160. White Winston waited until its answering brief before the Special Master to argue that some of its claims were not barred. D.I. 225 at 18. But an "alternative theory" not before an appellate court cannot "be remanded to the district court" for consideration in the first instance. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 88 (3d Cir. 1987). So White Winston forfeited the issue—something it does not seriously contest in its reply brief. *See generally* D.I. 246 at 6 n.2.

### 2. The Third Circuit's mandate requires me to award damages for White Winston's suit as a whole

Even if White Winston did not forfeit the argument that it owes damages for only some of its claims, the Third Circuit's opinion ties my hands. On remand, I may consider only "those issues not expressly or implicitly disposed of by the appellate decision." *Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir. 1985). And here, the Third Circuit's opinion is clear that White Winston's entire suit breached the parties' amended letter.

5

Under Delaware law, a claim for breach of contract requires (1) "the existence of [a] contract," (2) the "breach of an obligation imposed by that contract," and (3) "resultant damage." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). The Third Circuit found that Good Times had satisfied the first two elements: Paragraph 8 of the amended letter was a binding agreement that "neither party had the right to sue except under one of the exceptions," and "White Winston breached that promise" by bringing a lawsuit that did not fall within "an exception listed in paragraph 8." D.I. 212-1 at 7–8. Nowhere in its breach analysis did the Third Circuit suggest that only some of White Winston's claims violated paragraph 8. To the contrary, the Third Circuit was clear that "Good Times should never have had to defend itself in this case." *Id.* at 9.

Because the appellate court resolved the first two elements of Good Times's counterclaim, the Special Master's job on remand was straightforward: "determin[e]" the "damages" Good Times incurred "because of White Winston's breach of its promise not to sue." D.I. 212-1 at 9. So the Special Master read the Third Circuit's mandate correctly and calculated damages "for the entirety of the litigation." D.I. 235 at 8. Based on that conclusion, I do not reach White Winston's argument that Good Times cannot prove claim-by-claim damages to a reasonable certainty. D.I. 242 at 14.

### 3. White Winston's contrary arguments are meritless

White Winston resists the plain import of the Third Circuit's language, arguing that the appellate court could not possibly have held that "*all* claims White Winston brought breached the covenant not to sue." D.I. 242 at 8. Over the course of this litigation, White Winston brought five claims: two asserting breach of the parties'

6

unsigned stock-purchase agreement, one asserting breach of paragraph 7 of the amended letter, one asserting breach of the implied covenant of good faith and fair dealing in the amended letter, and one asserting promissory estoppel. *See* D.I. 96 at 36–52. According to White Winston, the Third Circuit held that at most only two of those claims—breach of the implied covenant and promissory estoppel—were barred by paragraph 8. D.I. 242 at 10, 12. On that telling, the stock-purchase agreement claims were not barred because they did not arise out of the letter and the exclusive-dealing claim fell within the paragraph 7 exception. *Id.* at 11–12.

White Winston's arguments are unconvincing. As a threshold matter, and as the Special Master observed, White Winston reads words into the Third Circuit's opinion that are not there. D.I. 235 at 8; c*f. In re Avandia Marketing, Sales Practices and Prods. Liability Litig.*, 484 F. Supp. 3d 249, 260 (E.D. Pa. 2020) (declining to "read an implicit requirement into the Third Circuit's mandate that contradicts its explicit directives"). But even if the Third Circuit's opinion gave me flexibility to go claim by claim, I would not agree that White Winston's stock-purchase agreement and exclusive-dealing claims fell outside of paragraph 8.

Start with the claims alleging that Good Times breached the parties' unexecuted stock-purchase agreement. As the Third Circuit put it, paragraph 8 of the amended letter protected both parties "from suit in the event they decided to walk away from the deal." D.I. 212-1 at 7. When White Winston sued Good Times for breach of the unsigned stock-purchase agreement, it was bringing "claims" based on Good Times's "terminat[ion] [of] negotiations," which is precisely what paragraph 8 forbade. D.I. 96

7

at 40 ¶ 229 (complaint), 108 (text of paragraph 8). To be sure, paragraph 8 carved out certain claims, but not claims based on the stock-purchase agreement. Paragraph 8 thus barred the two claims arising from that agreement.

Next, consider the claim that Good Times had violated paragraph 7's exclusive-dealing provision. White Winston is correct that paragraph 8 exempted "claimed breaches of paragraph[] 7." D.I. 96 at 108; D.I. 242 at 12. But White Winston never alleged that Good Times had failed to deal exclusively with it. Instead, it argued that Good Times had torpedoed the parties' deal in bad faith. D.I. 96 ¶ 256. True, I concluded before trial that the parties' obligation to negotiate in good faith flowed from the exclusive-dealing clause. D.I. 152 at 4. But the Third Circuit disagreed, holding that it arose, if at all, from the implied covenant of good faith and fair dealing. D.I. 212-1 at 5. So White Winston's exclusive-dealing claim duplicated its implied covenant claim: in reality, *both* arose from the implied covenant, and thus did not fall within the exceptions in paragraph 8's nonsuit provision. *Id.* at 8.

Accepting White Winston's arguments to the contrary would improperly elevate the "form" of its pleadings over their "substance." *Kerrigan's Estate v. Joseph E. Seagram & Sons*, 199 F.2d 694, 696 (3d Cir. 1952). If White Winston could have circumvented paragraph 8 by simply labeling any claim against Good Times as arising under paragraph 7, paragraph 8 would be meaningless. Allowing that kind of manipulation would collide with the principle that contracts should be construed to avoid making any term "illusory." *Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56 (Del. 2019). So paragraph 8 barred White Winston's exclusive-dealing claim.

## B. The Special Master correctly rejected White Winston's failure-to-mitigate defense

White Winston next argues that the Special Master exceeded his authority when he considered and rejected White Winston's affirmative defense that Good Times had failed to mitigate its damages. D.I. 242 at 16–18. But even if White Winston is right, any error on that front is harmless because Rule 53 provides for de novo review of the Special Master's factual findings. Fed. R. Civ. P. 53(f)(3). And the Special Master correctly rejected White Winston's failure-to-mitigate defense. Under Delaware law, "[t]he duty to mitigate is assessed in reference to the exposure of the mitigating party to risk and uncertainty." *Henkel Corp. v. Innovative Brands Holdings, LLC*, No. CIV.A. 3663-VCN, 2013 WL 396245, at *5 (Del. Ch. Jan. 31, 2013). White Winston's "litigation posed a serious threat to Good Times's business because White Winston sought an injunction to force the sale of the company or in the alternative over $18 million in damages." D.I. 235 at 17. So "Good Times's vigorous defense was foreseeable and reasonable in both scope and cost." *Id.*

White Winston argues that Good Times could have lowered its litigation expenses by asserting paragraph 8 of the amended letter as an affirmative defense rather than through a counterclaim. D.I. 242 at 18. Maybe so. But that is irrelevant. Mitigation "may not be invoked by a contract breaker as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser." *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LL*C, No. CIV.A. 2742-VCN, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009). The relevant question is not whether Good Times could theoretically

9

have saved money through different litigation choices, but rather whether the choices it made were reasonable. Given the existential risk posed by White Winston's suit, Good Times acted reasonably.

\* \* \* \* \*

While White Winston lobs a volley of challenges to the Special Master's calculation of the damages it owes Good Times for breaking its promise not to sue, none persuades. So I adopt the Special Master's report and recommendation in full and award $3,826,715.07 in damages plus pre-judgment and post-judgment interest.